IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JERRY LOUSTEAU                                                                                     PLAINTIFF

VS.                                                        CIVIL ACTION NO. 3:11cv676-DPJ-FKB

CITY OF CANTON, MISSISSIPPI,
WILLIAM TRULY, and VICKIE McNEIL                                              DEFENDANTS

ORDER

This is an action brought pursuant to § 1983 for alleged violations of Plaintiff's First Amendment rights. Jerry Lousteau, the owner of a radio station and the host of a news commentary radio show, contends that Defendants have retaliated against him for constitutionally-protected statements he has made on his radio program concerning them. In discovery, Defendants sought disclosure of Plaintiff's sources for some of these statements. Plaintiff refused to identify his sources, claiming a reporter's First Amendment privilege to keep this information confidential. *See Miller v. Transamerican Press, Inc.,* 621 F.2d 721, 725, *opinion supplemented on denial of reh'g*, 628 F.2d 932 (5th Cir. 1980).

Defendants then filed a motion to compel Plaintiff to disclose his sources. Defendants' theory as to the relevance of this information was that it could show that the speech for which they allegedly retaliated against Plaintiff was not protected by the First Amendment. Under *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964), public, defamatory statements made with "actual malice," *i.e.* either with knowledge that they are false or with reckless disregard for their falsity, do not enjoy First Amendment protection. Thus, Defendants reasoned, if they could show that Plaintiff's statements about

Defendants were false and that he had no reliable source for them, then Defendants could not be held liable for retaliation as to those statements.

For purposes of the motion to compel, the Court accepted Defendants' defense theory. However, examination of the specific speech by Plaintiff for which Defendants were seeking his sources revealed that much of that speech consisted of mere opinion or name-calling. In the end, the only speech identified by Defendants which could arguably be considered as consisting of statements of fact about Defendants, *i.e.*, containing a "provably false factual connotation," *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990), were statements in Lousteau's November 8, 2010, broadcast concerning a matter referred to by Plaintiff as "turkeygate." Turkeygate involved Defendant Vickie McNeil's alleged mishandling of $600 in donations she received for the purchase of holiday turkeys and hams for local police officers. While most of Plaintiff's references in that broadcast were in the form of rhetorical questions and contained qualifiers such as "some say" and "the implication is," the Court determined, for purposes of resolving the discovery dispute, that a reasonable listener could have concluded from Plaintiff's statements that McNeil had committed a crime, was the subject of a criminal investigation and would soon be prosecuted. Accepting Defendants' argument that they could assert a defense based upon a showing that these statements were false and that Lousteau knew that they were false, the Court entered an order on October 17, 2012, holding that Defendants were entitled to discover Plaintiff's sources for these statements.

Thereafter, Lousteau sought and was granted a stay of the order while he attempted to obtain documents which he claimed could show that his statements were not

2

false.  Plaintiff then obtained and produced to Defendants documents from the Office of the Mississippi Attorney General indicating that at the time of the broadcast, the Attorney General's Public Integrity Division was investigating McNeil's handling of the donations.  That investigation included an interview with McNeil, after which she provided a written statement to investigators.

Presently before the Court are motions relating to the October 17, 2012, order.  Plaintiff seeks to have the order vacated, while Defendants seek to have the stay of the order lifted.  At issue is whether, or the extent to which, production of the documents from the Attorney General has abrogated Defendants' need for, or right to obtain, any further information concerning the identity of Plaintiff's sources.

Lousteau, as a news reporter, has a qualified privilege under the First Amendment to maintain the confidentiality of his sources.  The policy promoted by the privilege is to encourage informants to supply information without fear of exposure or reprisal.  *See Miller*, 621 F.2d at 725.  The privilege may be overcome, and a news reporter required to disclose his sources, where there is a necessity for the confidential information and a lack of other means of obtaining it.  *See In re Selcraig*, 705 F.2d 789 (5th Cir. 1983).  Furthermore, where a news reporter chooses to file a lawsuit about which his sources may have information that goes to the heart of a claim or defense, he waives his privilege to keep those sources confidential.  *Anderson v. Nixon*, 444 F.Supp. 1195 (D.C. 1978).  The pertinent question at this stage of the present litigation is whether the identification of Plaintiff's sources will provide such information.

As stated previously, the only representations of fact made by Plaintiff in his broadcast that are relevant to the present discussion are that McNeil had committed a crime for which she was being investigated and would soon be prosecuted. The documents from the Office of the Attorney General establish that at the time of the broadcast, McNeil was in fact the subject of a criminal investigation concerning her handling of the donations; thus, because this representation was not false, it cannot serve as the basis for any so-called "actual malice" defense. But the fact remains that Plaintiff's filing of this lawsuit, and the defense asserted by Defendants, places in issue the source of Plaintiff's statements, or at least suggestions, that McNeill had committed a crime for which she was about to be prosecuted. Defendants are entitled to conduct discovery on these issues.

Also before the Court is Plaintiff's request for costs and attorneys fees incurred in preparing the initial motion to compel, the motion to stay, and the present motion to vacate, and in responding to the present motion to lift stay. Plaintiff argues that the Attorney General documents, particularly McNeil's written statement of November 15, 2010, establish that Defendants have always known that there was an investigation of McNeil's handling of the donations and that their attempt to persuade the Court that they needed discovery in order to determine whether Plaintiff's assertions about such an investigation were true was made in bad faith. Plaintiff also alleges that Defendants should be sanctioned for discovery violations.

Defendants' motion to compel did not focus exclusively, or even very specifically, on Plaintiff's statements about a criminal investigation. Indeed, Defendants failed in their

4

motion to make any attempt to separate those statements made by Plaintiff which were both factual and public from his much more numerous statements of opinion and general criticism.  Instead, they took the position, particularly in their reply, that Plaintiff "makes things up" in general about Defendants in his broadcasts and that therefore Defendants are entitled to a broad range of information and documents regarding Plaintiff's sources.  It was left to the Court to attempt to determine what public statements of fact Plaintiff had made and what information concerning Plaintiff's sources might actually be relevant to a defense that Plaintiff's statements were not constitutionally protected.  In any event, Defendants have never specifically represented to the Court that no investigation occurred.  The Court finds, therefore, that an award of fees or costs is not warranted on this issue.

The alleged discovery violations identified by Plaintiff are the following: The statement in the City's response to interrogatory no. 2, signed by Defendant Truly on August 13, 2012, that the City is unaware of any official investigation regarding the donations; and McNeil's failure, in response to requests for production nos. 1 and 2, to identify and produce her written statement to the investigators from the Office of the Attorney General.   The former of these alleged violations does not warrant sanctions, as McNeil's knowledge of the investigation cannot be attributed to the City or to Defendant Truly.

Very troubling to the Court, however, is McNeil's failure to produce to Plaintiff her written statement of November 15, 2010, especially given her representation, in response to request for production no. 2, that no such document existed.  The Court concludes that

5

a show cause hearing should be held in order that McNeil and her attorneys can address the issue of why they should not be sanctioned for withholding this document.

Accordingly, Plaintiff's motion to vacate the order of October 17, 2012, and Defendants' corresponding motion to lift the stay of that order, are granted in part and denied in part.  Plaintiff's motion for fees and costs is denied except as it pertains to McNeil's failure to produce her written statement.  It is hereby ordered that a show cause hearing shall be held on May 14, 2013, at 9:30 a.m., at which McNeil and her attorneys shall personally appear and show cause, if any, as to why sanctions should not be imposed for failing to produce McNeil's written statement of November 15, 2012, and/or for representing that no documents responsive to request for production no. 2 existed.

SO ORDERED this the 30th day of April, 2013.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE